UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| JUAN LEAL, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. M-09-228 |
| § | |
| GOVERNMENT EMPLOYEES § | |
| INSURANCE COMPANY, ET AL, § | |
| § | |
| Defendant. § | |

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**

**I.  Introduction**

Now before the Court is Plaintiffs' Motion to Remand the case brought to this Court on Plaintiffs' Ninth Amended Original Petition.  (Docs. 1, 7).  Plaintiff Jon P. Patterson, individually and on behalf of all others similarly situated,[1] originally brought suit against Defendants Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, Criterion Insurance Agency, Inc., and Colonial County Mutual Insurance (collectively "Defendants" or "GEICO")[2] on May 12, 1999 in the 332nd Judicial District Court, Hidalgo County, Texas.  (Doc. 1, Ex. D-1).  On July 23, 2009, Plaintiffs Patterson and Juan Leal, individually and on behalf of all others similarly situated, filed a Ninth Amended Petition in state court.  (Doc. 1, Ex. A).

Subsequent to the filing of this pleading, Defendants removed the case to this Court on the grounds that the Court has jurisdiction over the action under the Class Action Fairness Act ("CAFA").  (Doc. 1).  Subject to certain exceptions and exclusions not relevant here, CAFA

---

[1]  As explained *infra*, additional Plaintiff Juan Leal was not a plaintiff to this lawsuit until the filing of the Ninth Amended Petition.
[2]  The Original Petition named additional defendants who are no longer parties to this suit.  (Doc. 1, Exs. A, D-1).

gives district courts original jurisdiction over any "civil action" "commenced" on or after February 18, 2005 in which minimal diversity exists, the aggregate amount in controversy exceeds $5,000,000, and the proposed class includes more than 100 people. Pub.L. 109-2, 119 Stat. 4 (2005), §§ 4 (codified at 28 U.S.C. § 1332(d)), 9 ("The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act."); *see also*, *e.g.*, *Werner v. KPMG LLP*, 415 F.Supp.2d 688, 694 (S.D.Tex. 2006). Plaintiffs do not dispute that Defendants have fulfilled the procedural requirements for removal, that the case meets the diversity and amount in controversy requirements, or that the requisite number of proposed class members exists. (Doc. 7). Rather, they claim that the Ninth Amended Petition did not "commence" suit for purposes of removal under CAFA, and therefore they are entitled to remand. *Id.* The determination of their motion and Defendants' opposition to remand depends on the resolution of this narrow question. (Docs. 7, 8).[3]

## II. Factual and Procedural Background

In order to address whether Defendants properly removed this action under CAFA, the Court must review the factual and procedural "journey" of the case in state court. Plaintiff Patterson, a chiropractor, alleged in the Original Petition that on or about June 25, 1998, an agent of Defendants stated in a letter[4] to Lisa Olson[5] (a patient of Patterson and the Patterson

---

[3] In opposing remand, Defendants also argue that Plaintiffs did not properly file their motion within 30 days of removal, as required by 28 U.S.C § 1447(c), and therefore the motion should be denied as untimely. (Doc. 8). As Defendants recognize, the motion was first filed within this 30 day period but the Court ordered it stricken, after the 30 day period had passed, for failure to comply with Local Rule 7.1.D. (Docs. 5, 6). Plaintiffs then re-filed the motion in compliance with this rule by including a certificate of conference. (Doc. 7). The Court deems the motion as constructively filed in a timely manner, and will consider it on its merits. *See El-Kaissi v. Martinaire, Inc.*, 2005 WL 2897055, at *2 (S.D.Tex. Nov. 3, 2005)(citing cases)(district courts retain discretion over application of their local rules).

[4] The Original Petition does not use the term "letter," although later amendments make clear that Defendants' allegedly defamatory statements were in letter form, with the "GEICO Explanation of Benefits" attached. For the sake of clarity, the Court will use this term.

[5] The Court will use the spelling of Ms. Olson's name as used in later pleadings and in the copy of the alleged defamatory letter sent to Ms. Olson. (Doc. 1, Ex. D-5 at Ex. A).

Chiropractic Clinic, and Defendants' insured) that Patterson had charged an unreasonable amount for the medical treatment she had received from him and from the Clinic. (Doc. 1, Ex. D-1). The same letter also allegedly inferred that Defendants would help Ms. Olson avoid having to pay Patterson in full for the medical treatment received. *Id.* Patterson and the Clinic, also a plaintiff, sought to represent a class of chiropractors and providers of chiropractic treatment in bringing claims against Defendants for libel, defamation, and tortious interference with the plaintiffs' contracts with their patients for medical services. *Id.*

Over the course of more than a decade, Patterson amended the Original Petition nine times. (Doc. 1, Exs. A, D). Juan Leal, the only other named plaintiff in the present suit, appeared for the first time in the First Amended Petition as another patient to whom Defendants allegedly directed a defamatory letter that induced him to breach his contract for medical services by not paying for the treatment received. (Doc. 1, Ex. D-2). The First Amended Petition and all succeeding petitions other than the live pleading did not name Leal as a plaintiff; rather, they appear to have referenced him and other patients in an attempt to reinforce the factual bases for the claims brought by Patterson and/or the Clinic on behalf of the class(es) they sought to represent, and to reinforce the need for class treatment of those claims. (Doc. 1, Exs. A, D-2 through D-9). The Fourth Amended Petition attached copies of the letters at issue, including a copy of a letter dated April 6, 1999 and allegedly sent to Juan Leal with an accompanying, computer-generated "GEICO Explanation of Benefits." (Doc. 1, Ex. D-5 at Exs. C-3, C-4).

The claims asserted in the Original Petition remained largely the same until the filing of the pleading on which the case was removed, with one exception: for the first time in the Third Amended Petition, Patterson added a cause of action initially defined as "disclosure of private

and confidential information," alleging that Defendants had disclosed the identities and confidential medical information of patients to third parties in the course of preparing the letters at issue. (Doc. 1, Exs. D-4 through D-7, D-9).[6] For the first time in the Fifth Amended Petition, Patterson, "as next friend" of his patients, sought to represent two classes of Texas *patients*, apparently on the new cause of action, as well as a class of all medical practitioners to whose patient Defendants had sent a defamatory letter. (Doc. 1, Exs. D-6, D-7). Patterson omitted the patient classes from the Seventh Amended Petition but resurrected a single patient class again in the Eighth Amended Petition. (Doc. 1, Exs. D-8, D-9). That pleading, filed on September 5, 2003, more specifically alleged that the GEICO Defendants and additional Defendant Medata, Inc.,[7] a medical record reviewing agency used by GEICO, were liable to members of the patient class for violating the duty to keep physician-patient communications confidential. (Doc. 1, Ex. D-9). The patient class also sought declaratory and injunctive relief to stop this practice. *Id.* According to the pleading, GEICO "disclosed the confidential communications to the reviewing agency in connection with GEICO's order for a report from the reviewing agency which would provide the justification for GEICO to chop the medical practitioner's bill for patient treatment; or in connection with the exchange of patients' identities between GEICO and Medata, Inc." *Id.* In turn, Medata disclosed the communications to other third parties. *Id.* Also in the Eighth Amended Petition, Patterson proposed to represent a class of "physician" plaintiffs on the asserted claims for libel and tortious interference with contract arising from the letter communications between GEICO and patients of the proposed class members. *Id.*

---

[6] The next petition, the Fourth Amended Petition, added a civil conspiracy claim alleging that Defendants and others had conspired to disclose confidential patient information. (Doc. 1, Ex. D-5). The Fifth and Sixth Amended Petitions retained this claim. (Doc. 1, Exs. D-6, D-7).

[7] The Sixth Amended Petition added Medata as a defendant. (Doc. 1, Ex. D-7).

On appeal of the trial court's orders certifying the patient and physician classes, the Court of Appeals for the Thirteenth District of Texas found that Patterson did not have standing to bring a claim for breach of the duty of confidentiality on behalf of the patient class. (Doc. 8, Ex. C). In its Memorandum Opinion dated November 29, 2007, the court reversed the order certifying the patient class and dismissed the claim. *Id.* It also reversed the order certifying the physician class, without dismissing the libel and tortious interference with contract claims asserted by Patterson on behalf of this class, and remanded to the trial court for further proceedings. *Id.*

On July 23, 2009, Patterson and Leal, a plaintiff for the first time during the course of this litigation, filed the Ninth Amended Petition individually and on behalf of the following class:

> All covered Texas residents, their third party beneficiaries and assignees (*e.g.*, licensed medical providers), who, during the period from May 12, 1997, to date of final judgment: (a) submitted first-party claims to GEICO pursuant to automobile policy's medical payment/personal injury protection ("PIP") coverage (collectively, "Medpay") claims for payment of medical expenses; (b) had their claim submitted to computer review by the GEICO DIRECT regional office at 4201 Spring Valley Road, Dallas Texas, (c) received or were tendered partial payment but in an amount less than the submitted medical expenses and (d) received or were tendered an amount less than the stated policy limits.

(Doc. 1, Ex. A). Plaintiffs, on behalf of the proposed class, for the first time assert a cause of action for breach of the GEICO Defendants' insurance policy agreements with their insureds wherein these Defendants allegedly promised to pay all reasonable medical expenses incurred for necessary medical treatment as a result of injury caused by a covered incident, within policy limits. *Id.* Defendants allegedly breached these agreements by using "biased" computer software that imposed "secret," fixed caps on payments of PIP and Medpay benefits to insureds and by then using reports generated by this software (the "GEICO Explanation of Benefits") to justify the reasonableness of the reduced payments. *Id.* The Ninth Amended Petition abandons

all previously asserted tort claims against the GEICO Defendants. *Id.* It also omits Medata as a defendant, although it refers to Medata as a supplier of the allegedly biased software. *Id.*

**III. Analysis**

The Fifth Circuit has held that "the date on which a civil action is 'commenced' for purposes of CAFA is determined by state law," and more specifically, the state's own rules of procedure. *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 273 (5th Cir. 2009), *pet. for cert. filed*, 78 USLW 3208 (U.S. Sept. 30, 2009)(No. 09-398); *Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 803 (5th Cir. 2006). In Texas, a plaintiff commences suit when he files a petition with the clerk of court. TEX. R. CIV. P. 22. Here, Plaintiff Patterson filed the initial petition in state court in 1999, well before the effective date of CAFA. However, the Fifth Circuit has recognized "special circumstances" in which a suit may be commenced more than once for purposes of determining whether removal under CAFA is appropriate. *Abshire*, 574 F.3d at 273 (citing *Braud*, 445 F.3d at 804).

In *Braud*, the court held that that the post-CAFA amendment of a complaint through the addition of a new defendant commences a new civil action as to that defendant, and therefore permits removal under CAFA. *Braud*, 445 F.3d at 804. The court highlighted two considerations underlying its holding. *Id.* First, it reasoned that CAFA does not define when an action commences and therefore was not intended to replace case law germane to this question. *Id.* at 804-05. Citing to Supreme Court case law, the court identified the general rule that

> "a party brought into court by an amendment, and who has, for the first time, an opportunity to make a defense to the action, has a right to treat the proceeding, as to him, as commenced by the process which brings him into court." *United States v. Martinez*, 195 U.S. 469, 473, 25 S.Ct. 80, 49 L.Ed. 282 (1904)((citing *Miller v. M'Intyre*, 31 U.S. (6 Pet.) 61, 8 L.Ed. 320 (1832))). As the *Miller* Court explained, this is because it "would be a novel and unjust principle to make the defendants responsible for a proceeding of which they had no notice." *Miller*, 31 U.S. at 64.

*Id.* at 805. The second consideration for the court's holding in *Braud* was the language of the removal statute itself, which allows for the removal of a previously non-removable case "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading…from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b); *see id. at* 805-06.[8] The court explained that "although 'an amendment of the complaint will not revive the period for removal if a state court case previously was removable but the defendant failed to exercise his right to do so,' a different result generally is reached if the pleading amendment provides (1) a 'new basis for removal' or (2) 'changes the character of the litigation so as to make it substantially a new suit.'" *Id.* at 806 (citing CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 14C FEDERAL PRACTICE AND PROCEDURE § 3732, at 311-48 (3d ed. 1998)). The court found that the addition of a new defendant does the latter because it commences a new suit as to that party, and therefore permits removal "even absent any discussion of 'relation back,'"—that is, whether the amended pleading should "relate back" to the filing of a prior complaint. *Id.* at 806. Still, the court went on to determine that the addition of the defendant in the case before it did not relate back to the original complaint under either Federal Rule of Civil Procedure 15(c) or the nearly identical Louisiana rule because both require a showing that the defendant knew or should have known that the action would have been brought against it but for a mistake concerning the identity of the proper party, and there was no indication that the defendant had such knowledge. *Id.* at 806-08. The court noted in conclusion that its holding was limited to the addition of new

---

[8] Section 1446(b) concludes, "…except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." However, the one-year time bar does not apply to removals under CAFA. 28 U.S.C. § 1453(b); *see also Braud*, 445 F.3d at 806.

defendants, and that it was not deciding "when or whether the addition of new claims to a pre-CAFA case provides a new removal window." *Id.* at 808 n. 16.

Subsequent to *Braud*, the Fifth Circuit in *Abshire*, *supra*, was called upon to determine whether a ninth amended pleading in a consolidated action that, for the first time and for case management purposes, sought class action treatment of previously asserted claims and added a request for attorneys' fees and costs, "commenced" an action for purposes of removal under CAFA. The court first determined that the mere addition of class allegations does not commence a new action under CAFA, especially where the proposed class at issue was comprised only of individuals or successors of individuals who were previously parties to the suit. *Abshire*, 574 F.3d at 273-75. The court analogized to the expressed concerns in *Braud* about "[making] the defendants responsible for a proceeding of which they had no notice," which it characterized as "notice and due-process concerns," and found that they were not implicated where the new pleading, with the exception of the attorneys' fees claim, "adds not a single plaintiff of whose claim [the defendants were] not already aware." *Id.* at 274 (quoting *Braud*, 445 F.3d at 805). Moving on to the defendants' argument that the addition of new plaintiffs or claims commences a civil action under CAFA, the court recognized that other circuits had employed a "relation back" test, under federal or state law or both, to determine this question. *Id.* at 275-76 (discussing cases). The Fifth Circuit, however, found it "far from pellucid why the relation-back test should control our analysis of CAFA's non-retroactivity provision," given the overlapping but still logically independent concerns balanced by relation-back (policies underlying statutes of limitations) and non-retroactivity (unjust disturbance of settled legal expectations). *Id.* at 276-77.[9] In any event, the court found that the limitations concerns balanced by the relation back

---

[9] The court described the policies underlying statutes of limitations as "evidentiary concerns and repose," which require that a plaintiff "(1) commence suit (preserving the evidence) and (2) furnish the defendant

doctrine were "virtually non-existent," and therefore the doctrine itself "particularly unilluminating," in the case before it. *Id.* at 276-77.[10] Nonetheless, the court then *applied* the relation back test under Louisiana and federal law and determined that the addition of any new plaintiffs and a claim for attorneys' fees and costs in the ninth amended pleading related back to the original complaint or, at the least, to one or more pre-CAFA complaints, such as the eighth amended version. *Id.* at 276, 278-79. More specifically, the court applied Louisiana law in determining that the addition of the (arguably) new plaintiffs satisfied the relation back test, and further concluded that attorneys' fees "obviously arise out of the same transaction or occurrence that led to the filing of the original complaint, which is the test for relating back under both federal and Louisiana law." *Id.* at 278. For all of these reasons, the court concluded that the ninth amended pleading did not commence a new action under CAFA so as to permit removal. *See id.* at 278-79.

---

notice of the suit and its claims (preventing repose from vesting)." *Abshire*, 574 F.3d at 277. It identified "the typical concerns that caution against retroactively applying a rule or statue" as "the unjust disturbance of settled legal expectations on which a party has relied." *Id.* at 276.

[10] The court explained:

> Louisiana [the defendants] was sued long ago on all of the claims, except, possibly, on the…claims for attorneys' fees and costs, by all of the members of the putative class. Even if we were to grant that some of those claims ran aground over the past 17 years and that a class action might revive them, Louisiana lost any expectation of repose for claims brought by the named plaintiffs in this litigation concerning Louisiana's acts or omissions in the underlying matters when Abshire et al. [the plaintiffs] filed this action in the early 1990s. And, at this point, any evidentiary concerns result from the length of the litigation, not from Abshire et al. sleeping on their rights. Neither are there notice concerns arising from the strategic choices made by Louisiana prior to the filing of the ninth amended complaint. Irrespective of whether it knew that this suit exposed it to class liability, Louisiana could not have removed this case prior to CAFA, so notice could not have affected its tactical decisions, at least not its choice of forum: It had none. Simply put, this is not a situation in which Louisiana could say, "Well, if I had known it was going to be a class action at the time it was filed, I'd have removed."

*Abshire*, 574 F.3d at 277 (footnote omitted).

In sum, this Circuit has identified only one clear exception to a state's default rule concerning when an action commences: the addition of a new defendant, as in *Braud*. The court in *Abshire* avoided determining whether new plaintiffs or claims can commence a new civil action under CAFA—a question left open by *Braud*—by concluding that the specific facts in the case before it allowed relation back, if that doctrine even applied.[11] Still, *Braud* and *Abshire* at least indicate that the addition of class allegations that subject defendants to a proceeding of which they had no notice can justify an exception to the default rule even absent direct consideration of the relation back doctrine, and therefore open a new removal window under 28 U.S.C. § 1446(b) by substantially changing the nature of the suit. Here, Plaintiff Patterson's lengthy litigation against the GEICO Defendants has, until the filing of the live pleading, involved tort claims asserted by Patterson and/or the Clinic, on behalf of the class(es) they sought to represent, relating to allegedly defamatory letters that interfered with contracts for services between medical providers and their patients and with the legal duty not to disclose patients' confidential information. After more than ten years of pursuing these claims, Patterson abandoned all previously asserted tort theories of recovery, added a plaintiff, proposed a new and expanded class, and asserted a new claim against Defendants for breach of contract, *i.e.*, breach of the insurance policy agreements between Defendants and their insureds. This is a case,

---

[11] Upon analysis of other circuits' treatment of the issue of whether new plaintiffs or claims commence a new suit under CAFA, the Fifth Circuit concluded that:

> [t]hese cases present two options for purposes of CAFA: (1) Only the addition of a new defendant re-commences a suit; or (2) the addition of a new plaintiff or a new claim re-commences a civil action under CAFA, but only if the amended pleadings do not 'relate back' to the original, pre-CAFA complaint. We need not consider choosing between these options on the facts of this case, however, as Abshire et al.'s [the plaintiffs'] ninth amended complaint relates back to the original complaint or, at the least, to one or more pre-CAFA complaints, such as the eighth amended version.

*Abshire*, 574 F.3d at 276.

therefore, where the amended pleading adds a plaintiff and proposed class members of whose breach of contract claim Defendants were not aware, thus presenting the kinds of "notice and due-process concerns" that this Circuit has found relevant to the issue of whether an amended pleading commences a new civil action under CAFA.

Also for these reasons, this is not a case such as *Abshire* that fails to implicate the notice concerns underlying statutes of limitations, to which the relation back test is "intimately connected." *Abshire*, 574 F.3d at 276-77. Therefore, the application of the test is at least more appropriate here than in *Abshire*, where the court in fact applied it, apparently to emphasize that a pleading that relates back is no candidate for CAFA removal. Here, whether under Texas or federal law, the Ninth Amended Petition does not relate back to the filing of any prior pleading. In Texas, an amendment to a pleading "that changes the facts or grounds of liability" relates back to a prior pleading not subject to limitations only if the amendment is not "wholly based on a new, distinct, or different transaction or occurrence." TEX. CIV. PRAC. & REM. CODE § 16.068 (Vernon 2008); *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 121 (Tex. 2004). Similarly, the federal rules allow relation back where "the amendment asserts a claim…that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). Admittedly, some of the facts surrounding Plaintiffs' new claim for breach of contract overlap with those supporting the prior claims. However, the operative facts—that is, those giving rise to liability—are wholly different. Again, the causes of action in prior pleadings stem from Defendants' written communications to patients that allegedly suggested that medical providers charged too much for their services, and from Defendants' alleged disclosure of patients' confidential information in the course of preparing these communications. In contrast, the new cause of action is "based on," or "arises out of,"

Defendants' alleged use of "biased" software that imposed "secret," fixed caps in order to reduce the payment of insurance benefits.  The new claim also arises out of a contract that did not form the basis for liability in prior pleadings, providing further indication that it is not based on the same transaction.  *See Meisler v. Republic of Tex. Sav. Ass'n*, 758 S.W.2d 878, 881-82 (Tex.App.-Houston [14th Dist.] 1988, no writ)(cause of action for breach of loan commitment and cause of action based on deed of trust executed to secure payment of loan were based on two separate and distinct transactions); *cf. C.F. S. Region, Inc. v. Marshall*, 787 S.W.2d 471, 473 (Tex.App.-Houston [14th Dist.] 1990, no writ)(breach of contract cause of action and cause of action for fraudulent inducement to enter into contract arose out of same employment contract and therefore were not based wholly on different transaction).

Furthermore, the Court finds that the addition of Leal as a plaintiff in the Ninth Amended Petition does not relate back to any prior petition.  Although certain of Patterson's prior pleadings refer to the alleged defamatory communications sent to Leal, and to Defendants' alleged disclosure of his confidential information, not one named him as a party.  When Patterson attempted to represent a class of which Leal was a proposed member, the Texas court of appeals determined that Patterson lacked standing to assert any claim on behalf of the class, and in fact dismissed the claim.  Under Texas law, the addition of Leal as a plaintiff cannot relate back to a claim brought on his behalf, but over which the court had no jurisdiction.  *See Armes v. Thompson*, 222 S.W.3d 79 (Tex.App.-Eastland 2006, no pet.).  Furthermore, the addition of Leal is not a substitution, or for the purpose of correcting the misnomer of a plaintiff.  *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 852 (Tex. 2005)(substitution of plaintiff asserting same cause of action in different capacity relates back); *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347 (Tex.App.-Texarkana 1998, no pet.)(amendment correcting misnomer of

plaintiff relates back). Therefore, this case presents no exception to the general rule in Texas that "an amended pleading adding a new party does not relate back to the original pleading." *Alexander*, 146 S.W.3d at 121. In addition, assuming the federal relation back rule "extends by analogy to amendments changing plaintiffs," the addition of a new plaintiff asserting a wholly distinct claim, and for reasons other than substitution or mistaken identity, does not permit relation back. *See* FED. R. CIV. P. 15 advisory committee's note (1966); FED. R. CIV. P. 15(c)(1)(C). For these reasons, the Court finds that the Ninth Amended Petition does not relate back to the filing of any prior petition.

### IV.    Conclusion

For the foregoing reasons, the Court concludes that the Ninth Amended Petition commenced a new civil action after the effective date of CAFA, and therefore opened a new window for removal under 28 U.S.C. § 1446(b). Accordingly, the Court hereby **ORDERS** that Plaintiffs' Motion to Remand is hereby **DENIED**.

SO ORDERED this 14th day of December, 2009, at McAllen, Texas.

_____
Randy Crane
United States District Judge